(No. 35078.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM CLARK, Plaintiff in Error.

*Opinion filed November 18, 1959.*

Louis W. Levit, of Chicago, for plaintiff in error.

Grenville Beardsley, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, and William H. South, Assistant Attorneys General, and Francis X. Riley, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Under an indictment returned to the criminal court of Cook County on November 27, 1956, William Clark, Arthur Sammons, Joseph Odum, and Randolph Taylor were jointly charged with the murder of Walter Pennegar and, when arraigned, each entered a plea of not guilty. The public defender was appointed to represent Clark, Sammons, and Taylor, but, at a preliminary hearing, was allowed to withdraw as Clark's attorney on the ground that the latter's defense was antagonistic to those of Taylor and Sammons. In his stead, the court appointed William Cain, a member of the Chicago Bar Association's prisoners committee, to represent Clark. Thereafter, both Odum and Clark filed motions for severance but only that of the former was allowed. Taylor consented to a bench trial. Clark and Sammons were jointly tried by a jury on April 16, 1957, and both convicted of the crime charged. Clark, who was sentenced to the penitentiary for a term of 20 years, now prosecutes this writ of error, contending that the evidence was insufficient to support a conviction, that the trial court erred in denying him a separate trial, and that he should have been discharged under the so-called four months statute. (Ill. Rev. Stat. 1955, chap. 38, par. 748). Hereinafter, Clark shall be referred to as plaintiff in error.

At the trial of the cause, Robert Parker, a Chicago police officer, testified over plaintiff in error's objection concerning

a conversation the witness had with the codefendant, Sammons, upon the occasion of the latter's arrest, wherein Sammons told the witness that he and Odum, and two other men whom he did not know, went to the residence of Pennegar, a narcotics informer who had informed on Odum, with the intention of administering a physical beating. The balance of the conversation was that Sammons remained in the car while the other three men went to the house and that, although Sammons did not actually see the crime committed, he heard shots after which the three men returned to the car and discussed the slaying. Walter T. Gehr, an associate in the crime laboratory, also testified to a similar oral confession made by Sammons in his presence. The testimony of both witnesses was ruled admissible only as to Sammons and the jury was instructed to disregard it when considering the guilt of plaintiff in error.

Charles Younger, another police officer, also testified concerning Sammons's guilt. According to his account, Sammons denied any participation in the crime when first arrested but later signed a written confession which, in substance, coincided with the oral confession testified to by Parker and Gehr. Despite plaintiff in error's strenuous objection that such evidence, which he had neither participated in nor consented to, was inadmissible and highly prejudicial to him, the trial court permitted the written confession, which implicated Odum, Sammons and the two other unidentified men, to be read to the jury with the cautionary instruction that it should not be considered insofar as plaintiff in error's guilt was concerned.

At this point of the trial officer Younger testified to an oral confession allegedly made in his presence by plaintiff in error upon an occasion in October or November, 1956, when the officer had gone to Fayetteville, Tennessee, for the purpose of returning plaintiff in error to Chicago authorities. According to Younger, plaintiff in error admitted

that he, Sammons, Odum and a man named Rocky, (later identified as Randolph Taylor,) had gone to Pennegar's house on May 4, 1956, to "beat up" the informer; that Sammons remained in the car while the other three went to the house; and that after they had reached the house and announced they were police officers, Odum drew a gun and shot Pennegar as he opened the door, despite plaintiff in error's efforts to prevent the shooting. Still continuing with the details of the Tennesse conversation, Younger related that he told plaintiff in error Sammons had identified him from photographs as being one of the accomplices. This phase of the witness's testimony was enlarged and distorted in the eyes of the jurors when the prosecution stated over objection in closing argument: "A picture was obtained and it was shown to Sammons—the picture was then shown by officer Younger to Sammons and he said, yes, that's the man."

When officer Younger was cross-examined by plaintiff in error's counsel, it was brought out that although the former customarily made a written report of his investigations to his superiors, he made no such report in this case, made no notations of the conversation, and did not at any time attempt to have plaintiff in error's confession reduced to writing or witnessed by other persons.

In his own behalf, plaintiff in error denied any participation in the crime and denied *in toto* the oral confession which Younger had attributed to him. When he attempted to call his codefendant, Sammons, as a witness in order to examine him concerning the identification made by photograph, Sammons declined to testify, on advice of counsel, when the prosecution indicated it would bring out Sammons's prior criminal record if he took the stand.

The general rule is that those indicted jointly for the commission of a crime are to be tried together, and the matter of granting a separate trial is within the sound

discretion of the trial court. (*People* v. *Patris,* 360 Ill. 596; *People* v. *Sweetin,* 325 Ill. 245.) But this is a judicial and not an arbitrary discretion, (*People* v. *Lindsay,* 412 Ill. 472,) and where the circumstances are such that a defendant will be deprived of a fair trial if jointly tried, a severance must be ordered. (*People* v. *Minnecci,* 362 Ill. 541; *People* v. *Lehne,* 359 Ill. 631.) Confessions or admissions made by an accomplice outside the presence of a defendant are not admissible against the latter whether or not the parties are jointly tried, and we have repeatedly held that when a motion for separate trial is based on the fact that a codefendant's confession implicates the moving defendant, a severance should be granted unless the prosecution declares that the admissions or confessions will not be offered in evidence at time of trial, or if offered, that there will be eliminated therefrom any and all reference to the party applying for a severance. (*People* v. *Barbaro,* 395 Ill. 264; *People* v. *Patris,* 360 Ill. 596; 23 C.J.S. Criminal Law, sec. 935(b).) In *People* v. *Hodson,* 406 Ill. 328, a confession made by an alleged accomplice outside defendant's presence named defendant as an associate in guilt, and before receiving it in evidence the defendant's name was deleted therefrom and the letter "A" inserted in its place. Nevertheless, we held, despite such precaution, it was clear that Hodson was the person referred to in the confession and, therefore, its presentation to the jury was clearly erroneous. Similarly, in *People* v. *Johnson,* 13 Ill.2d 619, motion for separate trial was filed on the ground that a codefendant had made a confession implicating the defendant. In an attempt to overcome the objection, the People, before introducing the confession in evidence, deleted some matters it considered improper and also substituted the word "Blank" for defendant's name wherever it appeared. However, in ruling that a severance should have been granted, we again pointed out that there

was sufficient identifying material remaining to advise the jury that the unnamed person was in fact the defendant, and even though the jury was instructed that the confession was admissible only as to the person making it, it could not be said that its prejudicial effect was thus removed.

In arguing the motion for severance in this case, plaintiff in error's counsel pointed out to the court that Sammons had made a statement implicating two unidentified men and that, although his client's name was not specifically mentioned therein, it was the intention of the prosecution to connect Sammons's confession with other evidence to show that plaintiff in error was in fact one of the two men to whom the confession referred. An assistant State's Attorney expressly admitted that such was the intention of the prosecution. At the trial which followed, it affirmatively appears that the connection was established by Younger who testified, in addition to his testimony with respect to the Tennessee conversation, that Sammons identified plaintiff in error from a photograph as being one of the two unidentified men who was involved in the crime, and to whom the confession referred. With his codefendant refusing to testify on the grounds of self-incrimination, plaintiff in error was, in this case, left powerless to rebut or inquire into the obvious hearsay testimony by which Younger connected him with Sammons's confession.

Although it is arguable that the trial court could not, at the time of the severance hearing, have foreseen the exact manner in which plaintiff in error would be connected with his codefendant's confession, the admission of the assistant State's Attorney put him on notice that such a course would be followed. Admittedly, Sammons's confessions would have been improper had they specifically named the plaintiff in error and, as was true in the *Hodson* and *Johnson* cases, we can perceive no difference between that situation and the one at hand where the prosecution

was permitted to introduce evidence which fully advised the jury that plaintiff in error was one of the accomplices named in the codefendant's confession. In either case a confession made outside the presence of the accused, and not consented to by him, has the same prejudicial effects. Under all the circumstances it is our opinion the court erred when it refused to grant plaintiff in error a separate trial and that, despite the court's efforts to prevent injustice by cautionary instructions as to limitations on the evidence, the prejudicial effect of the codefendant's confessions inevitably remained. *People* v. *Johnson,* 13 Ill.2d 619; *People* v. *Bolton,* 339 Ill. 225; *People* v. *Patris,* 360 Ill. 596.

Plaintiff in error also contends he should have been discharged under the four months statute, (Ill. Rev. Stat. 1955, chap. 38, par. 748,) which requires that an accused, not admitted to bail, be tried within four months of his commitment unless the delay has resulted from the prisoner's own acts. We have carefully examined the record on this point and are of the opinion that the cause was continued from December 27, 1956, to January 3, 1957, upon motion of plaintiff in error's counsel, and that the four months period recommenced upon the latter date. (*People* v. *Meisenhelter,* 381 Ill. 378; *People* v. *Hotz,* 261 Ill. 239.) Since trial occurred on April 16, 1957, the court was correct in denying release. Because the case must be remanded for a new trial, no useful purpose can be served in considering whether the evidence was sufficient to support a conviction.

For the reasons stated, the judgment of the criminal court of Cook County is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*