THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN TRASS *et al.*, Defendants-Appellants.

First District (1st Division) Nos. 83—1855, 83—2606 cons.

Opinion filed September 9, 1985.

Steven Clark and Paul Alexander Rogers, both of State Appellate Defender's Office, of Chicago, for appellant John Trass.

Steven Clark, of State Appellate Defender's Office, and Alan Raphael, of Loyola University, both of Chicago, for appellant Finner Bryant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank G. Zelezinski, and Mark L. Lefevour, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a joint jury trial with codefendant Cornelius Boyd, defendants John Trass and Finner Bryant were found guilty of aggravated battery, home invasion and two counts of armed robbery. (Ill. Rev. Stat. 1983, ch. 38, pars. 12–4, 12–11, 18–2.) Trass was sentenced to serve a concurrent sentence of 13 years. Bryant received a concurrent sentence of 15 years. The appeals of Trass and Bryant have been consolidated by this court. Boyd did not join in the appeal.

The following issues are presented for our review: (1) whether the trial court erred in denying Bryant's motion for severance; (2) whether Bryant was denied his sixth amendment right to confront witnesses; (3) whether Trass was proved guilty beyond a reasonable doubt; (4) whether the court erred in allowing a police detective to testify as to one of the victim's nonidentification of two men he previously had erroneously pointed out to the police; and (5) whether certain alleged prosecutorial misconduct resulted in both defendants being denied a fair trial. For the reasons set forth below, we reverse as to Bryant and affirm as to Trass.

Testifying for the State at trial were the victims, brothers Joseph and John Jackson. Joseph testified that on June 29, 1982, at approximately 3:20 a.m., he left his estranged wife's apartment and began walking home to his brother John's apartment located in a Chicago housing project at 120 North Hermitage Avenue. Joseph was carrying $180 in one of his socks and $3 in his pocket. As he approached his brother's apartment building, he saw a group of five men and one woman standing in the lobby. The group included defendants Trass and Bryant, codefendant Cornelius Boyd and another man later identified as Austin Smith.[1] The other group members were not identified.

---

[1]The trial of Smith was severed from the trial of Bryant, Trass and Boyd.

Joseph testified that after noticing the group, he decided to walk around to the other side of the building. Upon doing so, he was approached by Bryant, who put a gun to his head and demanded money. Bryant then took the $183 from Joseph's sock and pocket and began beating him. Joseph stated that the rest of the group members joined in the beating. At that point, Joseph broke free and fled up the stairs to the fifth floor, but then fell and was caught by Bryant who demanded more money from him, threatening to "blow his brains out." When Joseph responded that his wife had money upstairs, the entire group, including Trass, got into an elevator and accompanied Joseph to his brother John's apartment. When John answered the door, the group forced their way inside the apartment.

Both Joseph and John testified as to the events inside John's apartment. Their testimony established that Austin Smith initially held John at gunpoint in the kitchen while Bryant took Joseph into a bedroom and forced him to search through a closet to find more money. Bryant took John's shotgun from the closet. Shortly thereafter, Smith, John and the unidentified female member of the group entered the bedroom. As Joseph continued to search through the closet, John was robbed and then blindfolded and forced to lie face down on the bed.

After approximately 25 minutes, one of the male intruders ordered the woman to get one of John's children who were asleep in another bedroom. The intruder then removed John's blindfold, and he saw the woman holding his three-year-old daughter. Bryant held a shotgun to the child's head and threatened, "If you don't have the money when I count to five, I'm going to shoot her." Bryant started counting, but he stopped at number four, and struck Joseph on the head with a gun. He then left, followed by the other group members.

John Jackson viewed two post-arrest lineups on July 15, 1982. At these lineups, he identified Trass and Boyd as two of the men who entered his apartment on June 29, 1982. His brother Joseph did not view any lineups. At trial, each brother positively identified Trass and Bryant as two of their assailants.

Detective Vick Switski testified he interviewed Trass immediately before and after the lineup in which John Jackson identified Trass. Switski stated that prior to the lineup, Trass told him he had been with his girlfriend at the time of the incident. However, when Switski asked for the girlfriend's name, address and telephone number, Trass admitted that he had been on the first floor of the housing project in question at the time of the incident. He told Switski that he had witnessed the attack on Joseph Jackson, but had not participated in it.

Trass also stated that after the attack, he went up to the seventh floor of the project and had seen several persons enter John Jackson's apartment, but had not entered the apartment himself.

Neither Bryant nor Trass testified at trial. Trass presented the alibi testimony of his girlfriend, Bessie Stevenson, who stated she was with Trass on the night of the crime. Bryant presented no evidence at trial.

I

■ Defendant Bryant first argues that the trial court erred in denying his motion for severance. We agree. The general rule is that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461.) It is incumbent upon the defendant seeking severance to make a specific showing, prior to trial, that he will be prejudiced by a joint trial. (*People v. Laboy-Rivera* (1984), 126 Ill. App. 3d 197, 201, 466 N.E.2d 1144.) In ruling on a motion for severance, the court is to make a prediction about the likelihood of prejudice at trial, taking into account the papers presented, the arguments of counsel and any other knowledge of the case developed from the proceedings. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468 N.E.2d 969.) The decision of the trial court will not be disturbed absent an abuse of discretion. *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.

Severance motions are generally granted based on two types of prejudice. One of these types occurs when defenses of the various defendants are so antagonistic that a severance is imperative to assure a fair trial. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) The other type of prejudice occurs when a codefendant has made hearsay admissions that implicate the defendant and such statement is likely to be admitted into evidence. (102 Ill. 2d 533.) In such cases, the "defendant may be denied his constitutional right of confrontation if the codefendant's hearsay admission is admitted against him and the defendant is unable to cross-examine the codefendant because the latter does not testify." (102 Ill. 2d 533, 541.) This latter type of situation is commonly referred to as a *Bruton* problem. *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

In the present case, Bryant alleged both forms of prejudice. His petition in support of his motion for severance indicated that he would give testimony at trial exculpating himself and implicating the other three codefendants, including Trass. Specifically, his petition re-

vealed that "[p]etitioner would testify that he was attempting to aid the complaining witness from being robbed by the other three codefendants." As counsel for Bryant correctly asserted at the hearing on the severance petition, Bryant's testimony would be in direct conflict with and antagonistic towards the recounting of the events in codefendant Trass' statement to the police. In that statement, Trass related that he was present at the scene where the crimes occurred and, although he himself did not participate, he did see defendant Finner Bryant approach and demand money from complaining witness Joseph Jackson. The State had informed the court that it intended to introduce the statement at trial. Over the objection of Bryant's attorney, the trial court at the severance hearing agreed to allow the State to use a redacted form of Trass' statement, substituting for Bryant's name "a male." The essence of the redacted statement, which was introduced at trial through the testimony of Detective Vick Switski, was that Trass saw Joseph Jackson approached by "a male" who demanded money from him which "the male" said Jackson owed him; Jackson refused to give him any money and then a "group of males who were with this original male, jumped onto Jackson and wrestled him to the ground."

We believe that even in its redacted form, there remained a clear implication that defendant Bryant was "the male" referred to in Trass' statement. Switski's testimony disclosing the contents of the statement was supplied to the jury after Joseph Jackson had taken the witness stand and testified that on the morning in question defendant Bryant had approached him and demanded money which Bryant said Joseph owed him. Significantly, at the hearing on the severance motion, counsel for Bryant apprised the court of the likelihood that Joseph Jackson would testify that Bryant approached him and demanded money, thereby making it clear to jurors that Bryant was "the male" referred to in Trass' redacted statement. The trial court therefore was put on notice of the high risk of prejudice inherent in this situation.

It is clear that in ruling on the severance motion, the trial court was required to consider the redacted statement in conjunction with all of the other evidence to be presented by the State. (*People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413; *People v. McVay* (1981), 98 Ill. App. 3d 708, 424 N.E.2d 922.) For example, in *McVay*, two defendants were convicted of burglary in a joint trial. Prior to trial, one of the defendants made a statement to a third person who testified to its contents at trial. Although this statement did not name the other defendant, it did indirectly implicate him. This court, in reversing the trial court's denial of the implicated defendant's motion for

severance, initially observed:

> "While the usual case involves an admission directly implicating a co-defendant, the confession or admission need not directly or expressly name a co-defendant, so long as the incriminating implications clearly point toward a co-defendant's guilt. (*People v. Clark* (1959), 17 Ill. 2d 486, 491-92; *People v. Serritello* (1944), 385 Ill. 554, 558, 53 N.E.2d 581.) *In assessing the incriminating implications for a co-defendant named in another defendant's admission, the admission must be viewed in the context of the State's other evidence.* (*People v. Clark* (1959), 17 Ill. 2d 486, 491-92; *People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473.) In *Hudson*, the test applied was whether the admission by a co-defendant readily leads to an incriminating conclusion against the defendant. 46 Ill. 2d 177, 196." (Emphasis added.) (*People v. McVay* (1981), 98 Ill. App. 3d 708, 716.)

We concluded that "when the statements are examined in light of other evidence," they readily lead to an incriminating conclusion against McVay. (98 Ill. App. 3d 708, 716.) We further observed that "the Illinois rule requiring severance in such situations far antedates *Bruton* and is premised upon fundamental principles of justice and the defendant's right to a fair trial ***." 98 Ill. App. 3d 708, 717.

Here, as in *McVay*, when Trass' redacted statement is examined in light of the other evidence, it readily leads to an incriminating conclusion against Bryant. We note that a recent decision by our supreme court indicates that even if the State had agreed not to use Trass' statement at trial, the denial of the severance motion would still have been improper in view of the antagonistic nature of the defenses of Bryant and Trass. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) In *Daugherty*, each codefendant made a statement to the police exculpating himself and inculpating the other. In remanding the cause for a new trial, the court noted that the prosecutor stipulated he would not use either of the codefendants' statements at trial, but the court concluded "[a]lthough this eliminated the source of any problem under the confrontation clause, it did nothing to alleviate the codefendants' concerns about their antagonistic lines of defense." 102 Ill. 2d 533, 543.

The State argues that the jury in this case was instructed that the statements of each defendant should be considered only as evidence against the maker. In similar circumstances, however, our supreme court has held that reversal was required despite cautionary instructions concerning the evidence. (*People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413; *People v. Johnson* (1958), 13 Ill. 2d 619, 150 N.E.2d

597.) As the court in *Clark* observed, "despite the court's efforts to prevent injustice by cautionary instructions as to limitations on the evidence, the prejudicial effect of the codefendant's confessions inevitably remained." *People v. Clark* (1959), 17 Ill. 2d 486, 492, 162 N.E.2d 413.

We conclude that the denial of Bryant's motion for severance resulted in substantial prejudice to him and deprivation of his right to confrontation guaranteed under the sixth amendment. The refusal to grant a severance, under the circumstances in this case, constituted reversible error, and Bryant's conviction is therefore reversed and the cause remanded for a new trial. In light of our disposition, it is unnecessary to consider any of Bryant's remaining assignments of error.

## II

■ We next address the allegations of error raised by defendant Trass. He first argues that the identification linking him to the crime did not establish his guilt beyond a reasonable doubt. He maintains that the identification testimony of the Jackson brothers was confusing and uncertain and therefore insufficient to prove his guilt. We disagree.

It is established that the testimony of a single credible witness who had ample opportunity to make a positive identification is sufficient to support a conviction even where, as here, there is contradicting alibi testimony. (*People v. Tate* (1981), 87 Ill. 2d 134, 148, 429 N.E.2d 470.) In determining whether an accused has been positively identified, this court has considered whether the witness had sufficient time to observe the offender at a reasonable distance and under adequate lighting. (*People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174.) The credibility of identification witnesses and the weight accorded their testimony rests within the trier of fact. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 326, 379 N.E.2d 847.) A reviewing court will not set aside a jury's verdict unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Goodum* (1984), 127 Ill. App. 3d 350, 468 N.E.2d 1237.

In the case before us, ample evidence exists to support the jury's determination. The record reveals that both Jackson brothers observed Trass under circumstances permitting a positive identification. First, Joseph Jackson had the opportunity to view Trass under fairly good lighting conditions during a period of more than 30 minutes, first in the lobby of the building, then on the elevator and later in John's apartment. At trial, Joseph was twice able to positively identify Trass. Joseph's identification of Trass was corroborated by his

brother John who testified that he saw Trass in his apartment during the home invasion and armed robbery. John positively identified Trass in a lineup only two weeks after the occurrence and at trial. Finally, John stated he had seen Trass several times prior to the crime at the gasoline station where he worked.

Trass argues that Joseph's identification was unreliable because he could not remember which defendant had braided hair. The law is settled, however, that precise accuracy in describing the accused is unnecessary where, as here, the identification is otherwise positive, since minor discrepancies affect only the weight given to testimony, but not the credibility of the witness. (*People v. Gomez* (1982), 107 Ill. App. 3d 378, 382, 437 N.E.2d 797.) We note that the apparent confusion concerning which defendant had braided hair at the time of the crimes arose because at the time of trial defendant Trass no longer had braided hair. One of his codefendants, however, had braided hair at trial. On cross-examination, defense counsel attempted to demonstrate that Joseph did not know which defendant had braided hair at the time of the crimes. However, on redirect examination, the prosecutor clarified any confusion regarding the hair and Joseph was again able to positively identify Trass as one of his assailants.

■ Trass also contends that John Jackson's identifications were tainted by suggestive pretrial procedures. In particular, he complains that his pretrial lineup was unduly suggestive because he was the only person in the lineup with braided hair. This court has previously recognized, however, that "[a]ny complaint that there were differences between the appearance of defendant and the other lineup participants goes to the weight of the evidence, rather than to its admissibility." (*People v. Philson* (1979), 71 Ill. App. 3d 513, 520, 389 N.E.2d 1223.) The fact that Trass was the only man in the lineup with braided hair does not establish that the lineup was impermissibly suggestive and that all identifications would be fatally tainted. (*People v. Philson* (1979), 71 Ill. App. 3d 513, 521; *People v. Davis* (1974), 21 Ill. App. 3d 177, 315 N.E.2d 79.) The authorities relied upon by Trass are inapposite to this case. He cites *People v. Boyd* (1974), 22 Ill. App. 3d 1010, 318 N.E.2d 212, *People v. Franklin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611, and *Israel v. Odom* (7th Cir. 1975), 521 F.2d 1370. In each of these cases, the lineups were either grossly suggestive (*e.g.*, different heights or obviously different races) or the defendants were forced to wear distinctive clothing similar to that worn by the offender. Here, Trass has not alleged that the police forced him to wear his hair in braids or that the other lineup participants had significant physical or racial differences.

We note finally that Trass' own statement in certain respects corroborated the testimony of the Jackson brothers. Although denying participation in the crimes, Trass admitted he was present near the two places where the brothers stated they observed him. Accordingly, we conclude that the evidence was sufficient to establish Trass' guilt beyond a reasonable doubt.

### III

Trass argues that the trial court erred in allowing Detective Switski to testify as to John Jackson's nonidentification of two possible suspects in a lineup. The evidence discloses that John Jackson viewed a lineup on June 30, 1985, which did not include Trass, but instead contained codefendant Austin Smith and two other suspects whom John had identified on the street as participants in the armed robbery and invasion of his home. Detective Switski, who conducted the lineup, testified over objection that John viewed the lineup and was unable to identify the two suspects he earlier had pointed out to the police. On July 15, 1982, John Jackson viewed another lineup and positively identified Trass as a participant in the crimes in question.

■ Trass argues that Switski's testimony concerning the initial lineup improperly disclosed an irrelevant prior consistent statement, and thus violated the general rule that a witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at the trial relative to the same subject. (*People v. Clark* (1972), 52 Ill. 2d 374, 388-90, 288 N.E.2d 363.) Defendant notes that this rule is held to apply with equal force where, as here, a third person seeks to testify concerning the prior consistent statement. (*People v. Fuelner* (1982), 104 Ill. App. 3d 340, 351, 432 N.E.2d 986.) In response, the State argues that evidence of a prior positive identification of the defendant is admissible and thus suggests that a prior consistent nonidentification of another suspect should also be admissible. We do not find the State's argument to be persuasive. A prior identification of the defendant is admissible because it refutes the possibility that an in-court identification is based solely on the suggestiveness of the trial setting. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) Evidence that a witness previously did not identify someone other than the defendant is not relevant for that same purpose and, therefore, is not admissible on that ground.

■ Although Switski's testimony concerning the prior nonidentification was irrelevant and should not have been admitted, we do not find that his testimony was so prejudicial as to require reversal of this cause.

## IV

■ Finally, defendant Trass contends that he was denied a fair trial because of several alleged improprieties by the State during trial and closing argument. The State maintains that Trass has waived consideration of this issue by failing to specifically raise the issue in his post-trial motion. We have reviewed the record and find that while Trass objected at trial to the alleged errors, he failed to specifically refer to them in his post-trial motion. He did, however, make a general oral motion for a new trial, without objection by the State, which effectively preserves those errors objected to at trial for review. *People v. Whitehead* (1966), 35 Ill. 2d 501, 221 N.E.2d 256.

Turning to the merits of Trass' contentions, we first consider his objection to the prosecutor's remark in her opening statement that Joseph Jackson believed Trass and his partners were members of the "El Rukan" street gang. Trass urges that he was denied a fair trial because the State never supported this remark with evidence at trial.

■ It is improper, at least with foreknowledge, to include matters in an opening statement which are not later proved at trial. (*People v. Platter* (1980), 89 Ill. App. 3d 803, 824, 412 N.E.2d 181.) However, reversible error occurs only where such impropriety is attributable to the deliberate misconduct of the prosecutor and results in substantial prejudice to defendant. (*People v. Lampton* (1982), 108 Ill. App. 3d 41, 45-46, 438 N.E.2d 915.) In the present case, the prosecutor asked Joseph Jackson a series of questions at trial concerning defendant's gang involvement. While Joseph's answers indicated he believed that defendants were involved in a gang, he faltered in his answers on exactly how he knew of their gang involvement. As a result, the trial court properly sustained defense counsel's objections and struck the testimony from the record.

In view of the State's apparent good faith attempt to introduce evidence as to Trass' gang involvement, we cannot conclude that the remark in question is attributable to "deliberate misconduct" on the part of the prosecutor. Trass also has failed to show how the remark substantially prejudiced him when viewed in light of all the evidence. The trial court instructed the jurors that opening statements were not evidence and should not be considered as such. Under these circumstances, the comment in question does not amount to reversible error.

■ Trass next contends he was denied a fair trial by the prosecutor's references during opening statement and closing argument to the fact that Joseph Jackson had moved out-of-town following the incident and also by questioning concerning Joseph's relocation. The

State had unsuccessfully tried to elicit testimony from Joseph as to when he had moved and whether he had moved his family. Trass argues that the State's attempts to show the victims had been relocated to insure their safety "created the impression that the defendant was trying to hide information from the jury" and that "defendant was a bad person who terrorized the community."

In addressing the foregoing argument, we note that on two occasions Joseph Jackson testified, without any objection, that he no longer resided in Illinois. Hence, the prosecutor's reference to Joseph's moving out of State was based on properly admitted evidence and was not error. We further find that the prosecutor's attempts to elicit additional information as to Joseph's relocation did not prejudice Trass' right to a fair trial. After each such attempt, the trial court promptly sustained defendant's objections and had the questions stricken. Any possible prejudice caused by the questions was cured by the court's prompt curative actions. *People v. Wilson* (1981), 92 Ill. App. 3d 370, 415 N.E.2d 1315.

■ Trass next assigns error to the prosecutor's comments during rebuttal referring to his defense as "meaningless" and a "smoke screen." Similar comments have been held to constitute reversible error only where they are accusations that the defense had fabricated its case or suborned perjury; where such comments, when read in context, merely charge defense counsel with obscuring the evidence, then the comments will be found to be within the wide latitude allowed prosecutors in their closing arguments. (*People v. Lavoy* (1980), 91 Ill. App. 3d 639, 644, 415 N.E.2d 487; *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 1145-46, 415 N.E.2d 585; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 324, 379 N.E.2d 847.) Here, the record reveals that the remarks objected to were directed at defense counsel's attempts to obscure the victim's positive identification evidence and were not accusations that the defense had fabricated its case or suborned perjury. As such, no prejudicial error resulted from the comments.

Trass contends that the State's references to his alibi witness, Bessie Stevenson, improperly reflected on defense counsel. Specifically, he complains of the following:

"[DEFENDANT TRASS' ATTORNEY]: Objection, Judge. If he is implying she perjured herself, I would suggest he indict her.

THE COURT: Sustained.

[ASSISTANT STATE'S ATTORNEY]: Let me know where she lives, and I will indict her.

[DEFENDANT TRASS' ATTORNEY]: Objection.

THE COURT: Sustained."

 We believe that the comment, "Let me know where she lives, and I will indict her," was invited by defense counsel's statement that "[i]f he is implying she perjured herself, I would suggest he indict her." While neither defense counsel's nor the State's comments were appropriate, defendant should not now be allowed to benefit from his own counsel's misconduct, which invited the response from the State. *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

 Trass also objects to the prosecutor's closing argument remarks suggesting that Bessie Stevenson had made up her story about Trass being with her. A prosecutor, however, may state that a witness' testimony is false if he relies on the evidence and reasonable inferences therefrom to support his statement. (*People v. Adams* (1982), 106 Ill. App. 3d 467, 435 N.E.2d 1203.) Here, Bessie Stevenson testified she had been living with Trass for 10 years, had a child with him and still loved him. Her testimony that she was with Trass at the time of the crimes was contradicted not only by both victims but by Trass' own statement to the police which placed him near the scene of the crimes, rather than with Stevenson. As such, the prosecutor could properly comment that given her affiliation with Trass, the reasonable inference is that Stevenson was lying about Trass' whereabouts on the night of the crimes.

 Finally, Trass urges that the prosecutor's comments during rebuttal improperly served to minimize the State's burden of proof. Regarding the standard of proof beyond a reasonable doubt, the prosecutor stated, "The defense would have you believe that it is an insurmountable burden, some mystical thing" and that "[i]t is a burden that is met by juries all over the country." We find no error as to this issue since comments similar to these have been held to be within the bounds of proper argument. In *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301, our supreme court held that the prosecutor's characterization of the State's burden as "not unreasonable" and "one that is met every day in courts" did not reduce the State's burden of proof. Relying on *Bryant*, this court more recently held that the prosecutor did not minimize the State's burden of proof where he commented that the reasonable doubt standard "is not a magical or scientific concept." (*People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1081, 467 N.E.2d 291.) Defendant relies heavily on *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, where the prosecutor stated,

"We don't have a burden." The prosecutor in this case did not make such a blatantly erroneous statement, and thus we find *Starks* distinguishable.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

McGLOON and O'CONNOR, JJ., concur.