THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS SMITH, a/k/a Randolph Darden, Jr., Defendant-Appellant.

First District (1st Division)    No. 76-1239

Opinion filed July 18, 1977.

88

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Dennis Smith, otherwise known as Randolph Darden, Jr. (defendant), was charged with theft of property valued at less than $150. (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a), (e)(1).) After a bench trial, he was found guilty and sentenced to imprisonment for 6 months. He appeals.

In this court defendant contends that the State failed to prove him

guilty beyond a reasonable doubt and that the court erred in denying defendant's motion to suppress certain physical evidence.

At the hearing on defendant's motion to suppress, he testified that he lives at 7625 South Honore, in Chicago. On May 17, 1976, he spent from 7:30 until 8:30 p.m. bowling at Marina City with his girlfriend, Pamela Brown. They then stopped for a bite to eat. He put the young lady into a taxicab and started home. At about 9:30, after walking down several streets, he was waiting for a southbound bus on the west side of LaSalle Street.

A police officer testified that, at approximately 10 o'clock that night, while on routine patrol with another officer, he responded to a call concerning a man wanted for breaking a window at 169 North Clark Street. Almost immediately after this call was received, the officer saw defendant on the east side of LaSalle Street peering through the window of a tavern at 215 North LaSalle Street. He asked defendant what he was doing at that location. Defendant responded that he was waiting for a bus to go home. The officers asked where he lived and he gave them the address of 4151 West Washington Street. In view of the fact that defendant was on the wrong side of the street for a southbound bus, the officers conducted a patdown search. A number of objects were found which will later be described.

At this point the court denied defendant's motion to suppress the evidence. On the State's case in chief, the same officer testified that shortly before 10 p.m. defendant was observed at 215 North LaSalle Street as above stated. After the conversation above detailed, the patdown search of defendant disclosed three or four watches. These watches were inventoried and received in evidence. On cross-examination, the officer added that defendant told him that he had been bowling at Marina City and was taking a bus home. The only bus stop on LaSalle Street in that vicinity is a northbound stop on the east side of the street. There are no bus stops on the north sides of either of the east-west streets bounding that block. The officer also testified that, after the watches had been discovered, defendant was placed under arrest and taken to 169 North Clark Street where the officer observed a broken window and the display therein in disarray.

The owner of the shop in question identified the watches as his property. When he closed the store at 8 p.m. that day, the window and display were intact. At about 11:15 p.m., he saw the glass window broken and watches, the same as those in court, were missing. The watches in question are brand names without serial number and without other identification. The watches are "well-known."

Defendant testified in his own behalf. He denied that he had taken the

watches from the window. He and his friend left Marina City, as above shown, and went to eat at a restaurant on Clark and Lake Streets in Chicago. Defendant put his friend in a cab on Dearborn or Clark Street. Then he saw two men and a lady walking down the street. The lady then stood still. Defendant heard glass breaking and one of the men ran past him. The other man dropped the watches in the alley. Defendant saw this, "[a]cross the street from the restaurant I ate at." He saw the man drop the merchandise "in the middle of LaSalle in the street—in the alley. LaSalle and the street before you get to LaSalle."

The first issue on the motion to suppress is the legality of the patdown search of defendant. The pertinent Illinois statutes are a codification of the frequently cited decisions in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. See *People v. Lee* (1971), 48 Ill. 2d 272, 278-79, 269 N.E.2d 488; *People v. Sanford* (1976), 34 Ill. App. 3d 990, 993, 341 N.E.2d 453, *appeal denied*, 63 Ill. 2d 554. The first of these statutes (Ill. Rev. Stat. 1975, ch. 38, par. 107-14) provides:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

In addition, section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 108—1.01) provides:

> "When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned."

On the motion to suppress, the burden of proving that the search and seizure were unlawful is on the defendant. (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(b), see *People v. Wright* (1969), 42 Ill. 2d 457, 460, 248 N.E.2d 78.) In reviewing the ruling of the trial court on the motion, it is our duty to affirm the result reached unless the ruling of the trial court was "manifestly erroneous." *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, and cases there cited.

■■■ In the case before us, in our opinion, the stop and frisk patdown

search of defendant was justified. The police had legal right to stop defendant for a reasonable period of time. The legal test of the conduct of the police officer requires that he " 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant * * *' " the stop of the citizen. *Sanford* (1976), 34 Ill. App. 3d 990, 995, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.

■■ The officer in the case before us was advised by police communications, immediately before he saw the defendant, that a window in a nearby business had been broken. When the officer first saw defendant, the latter was peering through a tavern window. These specific facts gave the officer the right to demand the name and address and an explanation from the defendant. We cannot say that this initial determination by the trial court was manifestly erroneous. The officer then learned from defendant that he lived at 4151 West Washington Street and that he was waiting for a bus. The officer, presumably familiar with the city of Chicago, necessarily noted that defendant would be obliged to take a bus going in a southerly direction and that he was on the wrong side of LaSalle Street for this purpose. This was an additional suspicious circumstance which tended to justify the officer in making a patdown search. The incident occurred after darkness and in an area of Chicago which the officer and this court know is generally devoid of pedestrian traffic during the night. We cannot say that the determination by the trial court that the officer reasonably suspected danger of attack was manifestly erroneous. When the patdown search disclosed three watches without additional explanation from the defendant, the officer was justified in placing defendant under arrest and taking him to the site of the broken window.

One additional factor justifies this conclusion. This court has previously stated that "[t]here is substantial authority in Illinois for the principle that additional testimony at the trial received after conclusion of the hearing on defendant's pretrial motion to suppress may be considered in passing upon the ruling by the trial court upon the motion." (*People v. Turner* (1976), 35 Ill. App. 3d 550, 567, 342 N.E.2d 158.) In that regard, this court there cited *People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808, which pointed out that "since the evidence at the trial established the legality of the arrest and the search in this case, defendant cannot avail himself of any error on the motion to suppress." 34 Ill. 2d 516, 520. See also *People v. Glanton* (1975), 33 Ill. App. 3d 124, 138, 338 N.E.2d 30.

■■ In the case before us the utterly inconsistent testimony of defendant in the case in chief discredits his testimony given on the motion to suppress to the effect that he was simply waiting for the bus on the west side of LaSalle Street when he was first approached by the arresting

officer. The motion to suppress was properly denied by the trial court.

We will comment briefly upon *People v. McGowan* (1977), 45 Ill. App. 3d 61, 359 N.E.2d 220, in which the Supreme Court of Illinois has allowed a petition for leave to appeal (Supreme Court Docket No. 49344). In *McGowan,* the officer saw two men wearing dark clothing enter a street from between a building and a vacant lot and proceed to walk in normal fashion. This occurred at about 12:50 a.m., in an industrial and high crime area in which pedestrian traffic was extremely rare. In our opinion, the result reached in *McGowan* by the appellate or supreme court of this State will not govern our decision in the case before us. The instant case presents many of these same facts. However, there are additional elements in the instant case as above pointed out which justify the belief that a crime was actually committed. These added elements include the official radio report to the police officers immediately before defendant was stopped and the fact that defendant here was peering into a tavern window. These additional factors gave the officer the right to demand the name and address of defendant and an explanation of his actions. In addition, in the case before us, the attempted explanation given by defendant was patently false. The totality of these facts is sufficient to support the result above reached without reference to the *McGowan* decision.

■■ Regarding the strength of the evidence to prove defendant guilty of theft, the proprietor of the store identified the watches as belonging to him. His testimony showed that this property was removed from his store after the window had been broken by persons unknown. The exclusive and unexplained possession of this property so recently stolen raised an inference that the defendant had obtained possession of the property by theft. (See *People v. Harris* (1972), 53 Ill. 2d 83, 85-87, 288 N.E.2d 873.) Defendant elected to take the stand and to testify in his own behalf. When he did this, he assumed " 'the risk of being disbelieved.' [Citation]." *People v. Montgomery* (1973), 16 Ill. App. 3d 127, 131, 305 N.E.2d 627. Compare also *People v. Morehead* (1970), 45 Ill. 2d 326, 330, 259 N.E.2d 8.

■■■ In such a situation, the trial judge had the right and the duty to consider the faulty explanation of defendant. Defendant first testified that he picked the watches up from the street one block south from where the officer was. He also testified that he picked the watches up on Clark Street across from the restaurant in which he had eaten with his friend. He stated that the watches were dropped right by the alley on LaSalle Street and also that they were dropped "in the middle of LaSalle Street in the alley." This testimony discredits the defendant's version of the incident and strengthens the inference of theft. At best, the factual issue regarding guilt was a matter of credibility of the defendant and whether his testimony

was sufficient to overcome the inference of guilt. Resolution of this issue was the function of the trial court and this court will not substitute its judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.