THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RONALD S. ROGERS *et al.*, Defendants-Appellees.

Fifth District    No. 78-450

Opinion filed May 18, 1979.

G. MORAN, P. J., dissenting.

Howard L. Hood, State's Attorney, of Murphysboro (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Richard E. White, of Murphysboro, for appellee Christopher Bell.

P. Michael Kimmel, of Kimmel, Huffman, Prosser & Kimmel, of Carbondale, for appellee Ronald S. Rogers.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants, Ronald S. Rogers and Christopher Bell, were charged by information with unlawful possession of cocaine in violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1100 *et seq.*). Defendants moved to suppress the evidence seized at the time of their arrest. Following an evidentiary hearing, the Circuit Court of Jackson County granted defendants' motions. The State appeals.

The evidence at the hearing consisted solely of the uncontradicted testimony of the two arresting officers, Daniel Dunn and Duke Pennell. At 10 p.m. on April 29, 1978, Officers Dunn and Pennell of the Elkville police department were on routine patrol in a marked squad car. Officer Dunn observed an unfamiliar vehicle legally parked on South First Street, a dead-end street on which two house trailers were located. One trailer was the residence of Officer Pennell; the other was unoccupied. Pennell knew that his wife was at work and that no one was supposed to be at home. Both officers were aware of past trouble in the area which had centered around the unoccupied trailer.

Officer Dunn then turned his squad car around and approached the unfamiliar vehicle head-on on South First Street. The motor of the parked car was running and its headlights had been suddenly turned on. At this time, the officers thought that they might be interrupting a burglary or "someone who did not belong there." As the squad car approached the vehicle, the officers could see defendant Rogers in the front passenger seat bending forward with his shoulders moving. Although the officers could not see Rogers' hands, they believed he was using his arms and hands on the floor of the vehicle.

After Dunn stopped the squad car, the two officers advanced towards the car which had the windows open on both sides. Dunn first spoke to Rogers, the front seat passenger, and shined his flashlight into the automobile. At this time, defendant Bell was in the driver's seat and a Mr.

Cullinane was in the rear seat. As Dunn bent over and looked into the car, he asked Rogers what they were doing. Rogers replied that they were drinking some beer. After Dunn noticed that there was no beer in the car, he asked the men for identification. Cullinane, who appeared nervous, and Rogers got out of the car and produced traffic citations as identification.

Officer Pennell asked Bell, the driver, for identification and asked him to get out of the car as well. Pennell testified that this was standard procedure when checking suspicious circumstances. Bell gave Pennell his driver's license but remained in the vehicle.

After having examined the identification, Officer Dunn was still curious about Rogers bending over in the front seat when the officers first arrived on the scene. Dunn looked through the windshield using his flashlight and observed that the floormat on the front passenger's side was in disarray and not lying flat on the floor. He believed that this was what Rogers had been "messing with" earlier. Dunn testified that he had no "real" reason to believe that any offense was being committed but was nevertheless suspicious that something was wrong. Bell then unexpectedly reached over and flipped up the floormat exposing a hand rolled cigarette and a small packet wrapped in newspaper. Dunn reached inside the car and picked up the package stating "my, my what do we have here?" After Rogers said that it was cocaine, the three men were placed under arrest.

Officer Pennell testified that he had seen packets similar to the one seized by Officer Dunn while in the armed forces police unit in the Philippines. He stated that it was common knowledge that this type of packaging was routinely used for most powder forms of hard drugs.

Officer Dunn testified that he had not intended to lift the floormat himself and look under it nor had he intended to arrest the men prior to the time cocaine was discovered. He added that none of defendants had argued with, fought or cursed the officers prior to their arrest.

In ordering the suppression of the evidence, the court found that the temporary questioning by the officers of defendants sitting in a parked vehicle on a dead end street near a vacant mobile home and the residence of one of the arresting officers was authorized under section 107—14 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 107—14) which provides for such questioning. The court, however, found that "any further action was unauthorized in view of the fact that the officers did not intend to arrest any of the occupants of the vehicle at that time nor did they have any facts on which to base an arrest." The court added that the evidence should be suppressed because it was obtained after the police had obtained the names and identifications of defendants as well as an explanation of the parties' purpose for being in the location.

On appeal, the State argues that the "stopping" of defendants was authorized under section 107—14 of the Criminal Code; that it was proper for the officers to detain and question defendants after checking identification and hearing an explanation of what they were doing because defendants admitted violating a statute regulating transportation of alcoholic beverages (see Ill. Rev. Stat. 1977, ch. 95½, par. 11—502) and because that explanation was patently false; and that as the officers were reasonably justified in being present at the scene, it was proper for them to seize the cocaine after it was exposed in plain view by defendant Bell.

■■ On a motion to suppress physical evidence, the burden of proving that the search and seizure were unlawful is on the defendant. (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(b); *People v. Wright*, 42 Ill. 2d 457, 248 N.E.2d 78 (1969).) On review, the decision of the trial court will not be disturbed unless it is "manifestly erroneous." *People v. Williams*, 57 Ill. 2d 239, 311 N.E.2d 681 (1974), *cert. denied*, 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506 (1974).

■ Under section 107—14, a police officer "may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an explanation of his actions." To justify a stop, the officer must point to specific and articulable facts which, taken together with rational inferences from those facts, make the intrusion reasonable. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

■ In the present case, it is clear that the officers were justified in making the initial stop under section 107—14. The officers observed defendants' automobile parked suspiciously on a dead-end street in a rather isolated area near the residence of Officer Pennell and a vacant mobile home late in the evening. As there apparently had been problems in the area centering around the vacant home, the officers had reason to suspect that they might be interrupting a burglary. From the factual circumstances presented, the officers could reasonably infer that defendants were committing or about to commit an offense and were therefore justified in stopping defendants, demanding their names and addresses, and in requesting an explanation of their actions.

■ But once defendants provided this information, the question remains whether further detention was authorized. As stated correctly by the trial court, if the officers were authorized to continue questioning defendants then it was lawful for them to seize the cocaine under the plain view doctrine as they had a legal right to be in a position to view the items in question; however, if the officers exceeded their authority under section 107—14 by continuing to detain defendants, then the plain view doctrine

would be inapplicable as the officers would not have had continuing justification to be present at the scene of the incident. (*Coolidge v. New Hampshire*, 402 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).) We have carefully reviewed the testimony of the arresting officers at the suppression hearing and conclude that defendants were lawfully detained at the time Mr. Bell uncovered the cocaine in plain view of Officer Dunn. Accordingly, for the following reasons, we reverse the order of the circuit court and remand the case for further proceedings.

We first note that we find no merit to the State's argument that the arresting officers were justified in continuing to question defendants merely because Rogers' statement indicated that they were violating a statute regulating the transportation of alcoholic beverages. First, Officer Dunn believed that sitting in a vehicle drinking beer was not a criminal violation. Second, he knew that Rogers' statement was false.

■ Nevertheless, we believe that when a police officer asks an individual, validly stopped pursuant to section 107—14, for identification and an explanation of his actions, the officer is entitled to make further inquiry when the individual's response is patently untrue and raises additional suspicions. (See *People v. Smith*, 51 Ill. App. 3d 87, 91, 366 N.E.2d 426, 428 (1st Dist. 1977).) The facts established that when Officer Dunn lawfully asked defendant Rogers what they were doing parked on the dead-end street, Rogers replied falsely that they were drinking beer. The failure of an individual to respond truthfully to lawful questioning in conjunction with the presence of other suspicious circumstances gives the officer just cause to continue his inquiry until he can determine why the individual responded in a false manner. To hold otherwise would impair the effectiveness of the statute. It would be illogical for a statute to authorize an officer to demand an explanation of an individual's actions yet require the officer to stop all questioning even when the response was clearly inadequate. We are not stating that an officer has the right to conduct a prolonged custodial investigation only upon a hunch that something is suspicious. But when an officer validly and reasonably stops an individual pursuant to section 107—14, he may conduct a limited inquiry to determine the information authorized by statute, *i.e.*, the name and address of the suspect and an explanation of what the suspect was doing.

In the present case, Officers Dunn and Pennell initially could reasonably infer from the circumstances that defendants were committing or about to commit a crime. When they lawfully approached defendants' vehicle they were confronted with other circumstances which did not dispel their suspicions. They first observed defendant Rogers bending down in the front seat of the car apparently attempting to hide something. Later, after defendants responded untruthfully to the officers' questions,

the officers noticed that the floormat was in disarray. Considering the suspicious circumstances justifying the initial stop and the suspicious events thereafter it was proper for the officers to continue questioning defendants on what they had been doing. Accordingly, when defendant Bell flipped up the floormat, thereby exposing in plain view the controlled substance during a lawful detention, the officers had the right to seize the evidence.

■■ We are aware that Officer Dunn stated that he had no "real" reason to believe that any offense was being committed prior to the time cocaine was discovered. When we view this isolated statement in the context of his entire testimony, it is clear that he was admitting that there was no tangible proof that defendants were committing a crime. But under section 107—14, to justify a "stop," the officer need only reasonably infer from the circumstances that criminal activity has occurred or was about to occur. A careful reading of Officer Dunn's testimony, we believe, supports a finding that he made such an inference throughout the period of detention.

Lastly we note that the testimony of the two officers was devoid of any reference as to the duration of the temporary detainment. A peace officer may stop an individual under section 107—14 "for a reasonable period of time." While the officers did not testify how long they detained defendants, it is clear that the detention was not unduly prolonged and unreasonable as to constitute a lawless invasion of the rights of private citizens.

For the reasons stated, the trial court's ruling granting defendants' motion to suppress was manifestly erroneous. Accordingly, we reverse the order of the Circuit Court of Jackson County and remand the case for further proceedings.

Reversed and remanded.

KASSERMAN, J., concurs.

G. MORAN, P. J., dissents.