THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL McGEE *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 85—1194, 85—1208 cons.

Opinion filed August 26, 1987.

Steven Clark and Joan S. Colen, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Michael J. Marovich, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendants Paul McGee and Dennis Eason were charged jointly by information with home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)), armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2), unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)), and residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3(a)). After a jury trial, both defendants were convicted on all charges. Paul McGee was sen-

tenced to a total of 18 years' imprisonment, and Dennis Eason was sentenced to a total of eight years.

Defendants appeal and raise the following contentions: (1) the police were not justified in making an investigatory stop of defendant McGee prior to his arrest; (2) the police lacked probable cause to arrest defendant Eason; (3) the photographic and lineup identifications of defendants made prior to trial were fruits of defendants' illegal arrests and should have been suppressed; (4) assuming that this court finds that the out-of-court identifications were fruits of the illegal arrests or remands for an evidentiary hearing on that issue, at which hearing the out-of-court identifications are found to be "fruits," then another hearing is required to determine whether the in-court identifications were tainted by the out-of-court identifications; (5) the trial court improperly prejudiced the jury against defendant McGee by allowing a police file photograph with the words "subject participated in a burglary" written on the back to go to the jury during its deliberations; (6) defendants were denied a fair trial because the State elicited testimony that the complaining witnesses had failed to identify anyone but defendants, despite viewing numerous photographs, thereby improperly bolstering the witnesses' identifications of defendants with irrelevant prior consistent statements.

For the reasons stated below, the judgment of the circuit court of Cook County is affirmed.

Prior to trial, a motion to quash arrests was filed on behalf of both Eason and McGee. At the hearing on the motion, the following evidence was adduced. On November 28, 1983, at about 7:04 p.m., Wilmette police officers Kwielford and Devorek received a radio broadcast from the Kenilworth police that an attempted burglary of a home located one-half block from the Plaza del Lago shopping center in Wilmette had just been reported. The broadcast did not give a description of the offender or offenders or of a vehicle, but did provide a "vague" description of a shoe pattern found in the mud at the scene.

Kwielford and Devorek drove to the parking lot of the shopping plaza. Kwielford got out of the car near the intersection of 10th and Sheridan. Devorek drove into the lot. Kwielford then received a radio call from Devorek and began to walk toward the north end of the parking lot. The north end of the lot was used by tenants of a nearby apartment complex and patrons of a nearby arcade shop. The remainder of the large parking lot was used by patrons of the stores located within the plaza. Near the south end of the lot was a Jewel food store, which was open on the night in question. Kwielford testified that he believed that one other store in the plaza also was open at the

time. A short time earlier, it had snowed lightly. The snow had stopped prior to the time the officers arrived at the shopping center.

Parked at the north end of the lot was a car in which Kwielford could see a person sitting in the passenger seat. That person was defendant Paul McGee. There were several cars parked at the north end of the lot, but this was the only car that did not have snow on it. Kwielford approached the car. As he came to the passenger side of the car, he observed a flashlight and a pair of gloves on the front seat, and a ski mask on the hump between the driver's seat and passenger seat. Kwielford asked McGee to step out of the car. McGee was not armed. As McGee got out of the car, Kwielford saw a pry bar on the floor of the car. He also observed that McGee's shoes were muddy and that there were no muddy footprints near the car.

Kwielford asked McGee what he was doing there. McGee said he was waiting for his friend. Kwielford asked McGee where his friend was, and McGee replied that he did not know. Kwielford then asked McGee his name and date of birth. Kwielford ran a name check on McGee which showed that there was an outstanding warrant for his arrest out of Skokie. Kwielford then arrested McGee, and McGee was taken to the police station by another officer.

Kwielford then called Wilmette police officer Mueller to come to the parking lot and "sit on [a] car that was parked in the parking lot." Before Mueller arrived and within several minutes after McGee was arrested, defendant Dennis Eason walked up to the car from the direction of the Jewel store. Eason was carrying a bag containing some goldfish crackers. Kwielford asked Eason his name and what he was doing there. Eason replied that he went to Jewel to purchase some goldfish crackers. Kwielford looked in the bag and saw some goldfish crackers and a time-stamped receipt that read 7:10 p.m. The time then was about 7:20 p.m.

Officer Mueller then arrived at the parking lot. Mueller looked at the bottom of Eason's shoes and then left to go to the scene of the reported attempted burglary. Mueller then called Kwielford and told him to bring Eason to the scene of the attempted burglary. Kwielford handcuffed Eason, told him he was being taken in for investigation, and transported him to the scene of the attempted burglary. While at the scene, Mueller removed one of Eason's shoes and compared it to the print which had been left in the snow and mud.

At the close of the hearing, the trial court granted the motion to quash arrests. The State then filed a motion for reconsideration. The court granted the motion for reconsideration and vacated its earlier order quashing the arrests. A motion for substitution of judges was

made and granted. The matter then proceeded to trial. The testimony at trial indicated the following.

On October 12, 1983, at around 10 a.m., two black men, one taller than the other, entered the Evanston home of Regina Nash. Nash and her housekeeper, Ms. Hortense Plummer, were the only people in the house. The men gained entry to the home by pretending to deliver flowers. One of the men had a gun. The men took Nash and Plummer to separate rooms in the house and tied them up. Various items were taken from the house.

After the offenders left, Nash called the Evanston police. Detectives Michael Perry and Robert Page arrived and interviewed the victims regarding descriptions of the offenders. Nash and Plummer were taken to the Evanston police department and shown numerous photographs, but failed to make any identifications. Nash and Plummer provided descriptions of the offenders from which police detective Robert Simmons prepared composite sketches. Copies of the composite sketches were distributed to various police agencies.

Between October 12, 1983, the date of the incident, and December 5, 1983, Nash and Plummer failed to identify anyone from police photographs. Detective Perry testified that none of the photographs shown to Nash or Plummer prior to December 5 included a photograph of either defendant. On December 5, 1983, Plummer tentatively identified the defendants from police photographs. She confirmed the identifications at a lineup conducted two days later. Nash identified defendant Eason at the lineup. She identified McGee at the subsequent preliminary hearing. Both Nash and Plummer identified the defendants at trial.

Following trial, the jury found Eason and McGee guilty on all counts. The trial court sentenced McGee to 18 years' imprisonment for armed robbery, 18 years for home invasion, 15 years for residential burglary, and three years on each of two counts of unlawful restraint. The trial court sentenced Eason to eight years' imprisonment for each charge of armed robbery, home invasion, and residential burglary, and three years for each of two counts of unlawful restraint. All sentences were to run concurrently. Both Eason and McGee filed notices of appeal. Their cases were consolidated for purposes of appeal.

I

On appeal defendants initially argue that the police were unjustified in making an investigatory stop of defendant Paul McGee. Defendants assert that McGee was "seized" within the meaning of

the fourth amendment when the police ordered him out of the parked car. (*Terry v. Ohio* (1968), 392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877.) They maintain that the investigatory stop of McGee was made without the "reasonable and articulable suspicion" to believe that defendant had committed a crime, as is required by *Terry*. The facts known to Officer Kwielford at the time he seized McGee amounted to a mere hunch, defendants assert, which was insufficient to justify the seizure.

Specifically, defendants look to the *Terry* test of whether the facts available to the officer at the time of the seizure " 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." (392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) In applying the *Terry* test to these facts, defendants note that the radio report that the police officers received failed to give any description of the offender(s) or of a vehicle. Further, Kwielford testified that McGee was not doing anything of a suspicious or criminal nature prior to the seizure. Kwielford also admitted that none of the objects he saw before the seizure necessarily indicated criminal behavior. Kwielford admitted that a flashlight is not necessarily a burglary tool and that it was not unusual to see someone with a ski mask in late November. Further, the trial court conceded that those items were consistent with legitimate activity (*People v. Beroukas* (1981), 98 Ill. App. 3d 990, 994, 425 N.E.2d 5, 9) when it vacated its initial order granting the motion to quash.

Defendants maintain that the "sum total" of Kwielford's knowledge was that a black man was sitting in the passenger seat of a parked car in an open shopping center at a time and place close to an attempted burglary in a white residential area. The trial court initially found, at the close of the hearing on the motion to quash arrests, that McGee was stopped based on Kwielford's "sixth sense" about a black man sitting in a white residential area. The court held at that time that the officer's "sixth sense" was not a constitutionally sufficient justification. Defendants contend that this was a proper ruling that should have been upheld. The fact that McGee was black and the neighborhood was white does not justify the intrusion. (*People v. Watson* (1972), 9 Ill. App. 3d 397, 400, 292 N.E.2d 457, 459-60.) Defendants contend that this assertion is particularly true in light of the fact that Kwielford had no reason to believe that a black man had committed the attempted burglary.

Prior to trial, however, upon the State's motion for reconsideration, the trial court vacated its original order quashing the arrests. In so doing, defendants assert, the court relied primarily on defendant

McGee's proximity in time and location to the scene of the reported attempted burglary. Defendants maintain that this reliance was improper for a number of reasons. First, the police radio report failed to give a description of the offender(s), or information regarding whether a car was used. In *People v. Jones* (1981), 102 Ill. App. 3d 246, 429 N.E.2d 1101, proximity to the crime plus a matching description, along with "furtive conduct," were held to be sufficient to establish reasonable suspicion. (102 Ill. App. 3d 246, 248-50, 429 N.E.2d 1101, 1103-04.) Defendants distinguish the instant case, in which no description was given and in which defendant was not doing anything suspicious.

Further, the fact that it was 7 p.m. and that some of the stores in the shopping plaza were open indicate that it was not unusual or suspicious that McGee would be in the car at that time and place. Defendants contrast *People v. McGowan* (1977), 69 Ill. 2d 73, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624, in which the police were justified in making an investigatory stop of the defendants, who were walking at a late hour in an industrial area where a number of burglaries had recently occurred.

Further, defendant McGee's propinquity to the scene of a crime, without more, is not a sufficient basis for the police to conduct an investigatory search of him. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, *rehearing denied* (1980), 444 U.S. 1049, 62 L. Ed. 2d 737, 100 S. Ct. 741.) Defendants assert that, at the hearing on the motion to quash arrests, the State recognized this "flaw" in its argument and attempted to justify the police stop by arguing that McGee's presence near the scene of the crime made him a potential witness whom the police had the right to question. The record fails to show, however, that Kwielford ever regarded McGee as anything other than a potential suspect. Defendants rely on *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381.

Defendants assert that the trial court also improperly relied on evidence that defendant McGee's shoes were muddy as being relevant because there were footprints left in the mud at the scene of the attempted burglary. That fact, however, was not learned until after McGee got out of the car. Further, the record is not clear regarding whether Kwielford knew, at the time of the stop, that the area near the crime scene was muddy, or if he learned that later. Additionally, McGee was not taken to the crime scene to have his shoes compared to the prints at the scene, as was Eason. Further, there could have been many possible reasons why McGee's shoes were muddy.

The State, on the other hand, asserts that, while investigating a

crime, the police may approach any individual for the purpose of investigating that crime, and that individual has the duty to cooperate with the police. (*People v. Long* (1983), 99 Ill. 2d 219, 230.) Thus, Kwielford was justified in initially approaching the car where McGee was sitting.

Further, the State asserts, Kwielford had articulable facts which warranted further investigation of defendant McGee and justified his asking McGee to step out of the car. At around 7:04 p.m. Kwielford received a report that an attempted burglary had occurred about one-half block from where defendant's car was parked. Immediately after receiving the report, Kwielford and his partner drove to the shopping center to investigate the crime. Additionally, Kwielford knew of the shoe prints found in the mud below the attempted point of entry at the crime site. Kwielford saw a pair of gloves, a ski mask, and a flashlight in the car, which objects could be used in a burglary.

Kwielford did not have to "shrug his shoulders," the State asserts, and allow a possible burglar to escape. (*Adams v. Williams* (1972), 407 U.S. 143, 145-46, 32 L. Ed. 2d 612, 616-17, 92 S. Ct. 1921, 1923, citing *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) Instead, he properly took an intermediate step in making a brief stop of McGee in order to determine his identity or to maintain the status quo momentarily while obtaining more information. (407 U.S. 143, 145-46, 32 L. Ed. 2d 612, 616-17, 92 S. Ct. 1921, 1923.) Further, Kwielford properly continued his investigation by asking McGee to step out of the car. (*People v. Smith* (1977), 51 Ill. App. 3d 87, 366 N.E.2d 426.) Additionally, the mere fact that Kwielford did not have a description of the culprits did not invalidate his investigatory stop of McGee. *People v. Herron* (1980), 89 Ill. App. 3d 1048, 1054, 412 N.E.2d 1365, 1369, *cert. denied* (1981), 454 U.S. 1080, 70 L. Ed. 2d 614, 102 S. Ct. 633.

Finally, the State points out that when he asked McGee to step out of the car, Kwielford's "suspicions" were verified by the facts that McGee's shoes were covered with wet mud and a pry bar was located in the car. At this point, Kwielford had probable cause to arrest McGee, since all of the facts known to him would cause a reasonable person to believe McGee had committed the crime. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276-77.) Even if the facts known to Kwielford did *not* amount to probable cause, nevertheless, Kwielford was justified in running a warrant check on McGee after receiving his name and birth date. (*People v. Ellis* (1983), 113 Ill. App. 3d 314, 320, 446 N.E.2d 1282, 1286.) The State asserts that the trial court's reversal of its earlier ruling on defendant McGee's motion to quash his ar-

rest therefore was proper.

In reply defendants assert that since the pry bar and muddy shoes were not seen until after the initial unreasonable stop, they cannot be used to justify the stop. Those facts did not lead Kwielford reasonably to suspect that McGee was involved in the burglary. Rather, the record supports the conclusion that McGee was arrested for the outstanding traffic warrant from Skokie.

■■ We find that the police had reasonable and articulable suspicion sufficient to justify an investigatory stop of defendant McGee. The evidence indicates that Kwielford had specific knowledge which would reasonably warrant him to detain and question defendant. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921.) Those factors include the attempted burglary report received by Kwielford only 15 minutes prior to his stop of defendant; defendant's propinquity in time and place to the crime; and the fact that the car in which defendant was sitting was the only one in the lot which was not covered with snow, which suggested that the car had just arrived there. Further, the car in which defendant was sitting was parked a great distance from the Jewel store, one of only two stores in the shopping center open at the time. Also, there were many other parking spaces available near the open stores. Finally, the presence in the car of a ski mask, gloves, and a flashlight, which objects could have been used in the commission of a burglary, also justified the stop.

*People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381, cited by defendants, is distinguishable from the instant case. In *Moorhead,* the police stopped the defendant nearly three hours after receiving a report of a robbery of a clothes cleaning shop, about 2½ miles from the scene of the reported crime. The prosecutor's assertions that the defendant fit the general description of the culprit and was carrying a sweater over his arm, apparently indicating that he was going to a clothes cleaning shop, were found insufficient. (17 Ill. App. 3d 521, 528, 308 N.E.2d 381, 386.) In the instant case, although there was no description of the assailants, nevertheless defendant was stopped within minutes of the police receiving the report of the crime and within a block of the crime scene. Further, there were other factors, including the presence of the flashlight, ski mask, and gloves, which justified the intrusion.

Additionally, defendants' reliance on *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, *rehearing denied* (1980), 444 U.S. 1049, 62 L. Ed. 2d 737, 100 S. Ct. 741, is misplaced. *Ybarra*

holds that mere propinquity to the scene of a crime, without more, does not give rise to *probable cause* to search a person. (444 U.S. 85, 90-91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) Defendants attempt to cite *Ybarra* for the proposition that defendant McGee's mere propinquity to the scene of a crime, without more, was an insufficient justification for the police to conduct an investigatory stop of him. By defendant's own admission in their brief, however, the proper standard for determining whether an *initial stop* is warranted is the lesser standard of whether there was reasonable and articulable suspicion to warrant the stop.

■ We also find that Kwielford later was justified in asking McGee to step out of the car (*People v. Smith* (1977), 51 Ill. App. 3d 87, 366 N.E.2d 426), at which time he saw a pry bar in the car. The presence of the pry bar warranted the police to detain defendant for further investigation. The police then found that McGee's shoes were wet and muddy. The presence of the pry bar and the fact that McGee's shoes were wet and muddy, along with the other facts previously known to Kwielford, provided the police with probable cause for McGee's arrest. *People v. Martin* (1984), 121 Ill. App. 3d 196, 459 N.E.2d 279.

## II

■ Defendants next assert that the police did not have probable cause to arrest defendant Dennis Eason. Defendants note, "There is probable cause when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Robinson* (1976), 62 Ill. 2d 273, 276.) Further, "In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act." *People v. Clay* (1973), 55 Ill. 2d 501, 504-05.

Defendants maintain that Eason's arrest occurred after Eason gave Kwielford his name and before Officer Mueller arrived. At that point, probable cause to arrest Eason was lacking. Defendants point to four factors on which the trial court allegedly improperly relied in ultimately denying defendants' motion to quash the arrests. First, it was Eason's car in which McGee had been sitting prior to McGee's arrest. This factor was insufficient to establish probable cause for two reasons. One is that McGee was arrested on a traffic warrant, and

not for the attempted burglary, and therefore any connection between McGee and Eason does not permit an inference that Eason was involved in the attempted burglary. Also, probable cause to arrest someone does not arise merely from the existence of probable cause to arrest another individual in the company of that person. *People v. Creach* (1980), 79 Ill. 2d 96, 102-03, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.

The second factor the trial court relied on was that Eason's car contained objects, *i.e.*, gloves, ski mask, flashlight, and pry bar, that the trial court found merely *could* have been used in the commission of a burglary. Third was the finding that Eason's shoes were wet and muddy, while the parking lot where he was walking had no grassy areas. Defendants assert that this finding directly contradicts the testimony at the hearing, as there was no evidence presented that *Eason's* shoes were wet or muddy. We note that the record indicates that defendant *McGee's* shoes were observed to be wet and muddy.

Further, the court's reliance on Eason's proximity in time and location to the attempted burglary fails to justify a fourth amendment intrusion. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338.) Finally, any suspicions Kwielford might have had regarding Eason's presence at that time and location should have been dispelled when Kwielford verified Eason's legitimate explanation for his presence, *i.e.*, that he had been shopping. (*People v. Watson* (1972), 9 Ill. App. 3d 397, 292 N.E.2d 457.) Defendants assert that the trial court's finding that there was probable cause to arrest Eason was manifestly erroneous and therefore should be reversed. *People v. Conner* (1979), 78 Ill. 2d 525, 532.

The State responds by asserting that the police had probable cause to arrest Eason and transport him to the crime scene to conduct further investigations. (*People v. Robinson* (1976), 62 Ill. 2d 273.) *Robinson* provides that it is proper to recognize, in determining whether probable cause existed, that police officers often must act upon a quick appraisal of the facts before them, and the reasonableness of their determination must be judged on the basis of their responsibility to prevent crime and to catch criminals. 62 Ill. 2d 273, 277.

In the instant case, the State asserts, probable cause existed to arrest Eason based on a number of factors. First, Eason's name appeared on the license-applied-for sticker found on the car. Therefore, there was a strong probability that the flashlight, ski mask, gloves, and pry bar found in the car belonged to Eason. Second, Eason parked his car only one-half block from the crime scene, and the po-

lice observed the car within minutes after the attempted burglary was reported. Third, Eason parked his car a distance of about one full block from the Jewel store from which he was returning, in a location from which the Jewel store could not even be seen.

Additionally, the police had reason to know that Eason's car had just recently arrived at that location, as it was the only car not covered with snow in the area. Further, the store receipt that Eason produced indicated that he had just arrived in the area. The State asserts that the trial court properly exercised its discretion in ultimately denying defendants' motion to quash their arrests, and defendants' convictions and sentences should be affirmed. *People v. Slonski* (1976), 40 Ill. App. 3d 319, 320, 352 N.E.2d 292, 293.

We find that probable cause existed for Eason's arrest. The record indicates that Kwielford had sufficient facts to warrant his reasonable belief that Eason was involved in the commission of the attempted burglary. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Robinson* (1976), 62 Ill. 2d 273.) Probable cause existed even assuming that there was no evidence that Eason's shoes were found to be wet and muddy. We note that although the items found in Eason's car do not necessarily indicate criminal activity, their presence, along with the other facts known to Kwielford, justified defendant's arrest.

The State incorrectly states the standard of review regarding the trial court's ruling on the motion to quash arrests as being whether there was a proper exercise of discretion. Rather, as provided in *People v. Slonski* (1976), 40 Ill. App. 3d 319, 352 N.E.2d 292, cited by the State, the correct standard is whether the trial court's decision is manifestly erroneous. We find no manifest error by the trial court in the instant case.

Further, *People v. Watson* (1972), 9 Ill. App. 3d 397, 292 N.E.2d 457, cited by defendants in support of their assertion that Eason verified his legitimate explanation for his presence in the parking lot, is distinguishable from the instant case. In *Watson,* an apparently disinterested receptionist verified the defendant's explanation of his presence at a bank. (9 Ill. App. 3d 397, 401, 292 N.E.2d 457, 460.) In the instant case, there was no such verification by a third person. Further, in the instant case, Kwielford knew that Eason did not live in the vicinity of the Wilmette shopping center, since Kwielford had checked the registration sticker on the windshield of Eason's car. Eason said that he had been shopping at the Jewel store, yet he parked about a full block away from the store, even though there were many parking spaces available much closer to the store. Further, Eason said

that he stopped at the store merely to buy a box of crackers. Based on these circumstances, the police acted reasonably in detaining Eason in order to obtain more information.

Additionally, we note here that since we have found that defendants' arrests were proper, we need not address defendant's contentions regarding the alleged "fruits" of the allegedly illegal arrests.

## III

■ Next, defendants assert that the trial court improperly prejudiced the jury against defendant McGee by allowing a police file photograph with the words "subject participated in a burglary" written on the back to go to the jury during deliberations. The photograph from which McGee was identified by Plummer was a 1979 Evanston police department photograph apparently taken in connection with a prior, unrelated arrest. Defendants do not dispute that the photograph itself was properly admitted into evidence and sent to the jury.

Defendants contend that the photograph containing the writing was evidence of prior criminal activity and therefore was highly prejudicial and improper. (*People v. Lampkin* (1983), 98 Ill. 2d 418; *People v. Gregory* (1961), 22 Ill. 2d 601.) Although a "mug shot" may be admitted into evidence on the issue of whether an accurate identification was made from the photograph, where the purpose of admitting the photograph is to prejudice the jury against the defendant by showing that he has previously been arrested, the evidence should not be admitted. *People v. Adams* (1974), 22 Ill. App. 3d 665, 668-69, 318 N.E.2d 278, 280-81.

Defendants assert that the likelihood that McGee was found guilty as a result of his prior criminal record was substantial because the accuracy of Nash and Plummer's identifications was questionable. The out-of-court identifications had indicia of unreliability, and the in-court identifications likely were improperly bolstered by the prior identifications and the trial setting. *United States v. Wade* (1967), 388 U.S. 218, 229, 18 L. Ed. 2d 1149, 1158-59, 87 S. Ct. 1926, 1933.

Further, defendants assert that the trial court's decision not to limit the evidence to the front side of the photograph was based on an apparent misconception of the defense theory of the case. During cross-examination of Plummer, counsel for McGee attempted to establish that Plummer's identification of the photograph might have been influenced by the writing on the back side. The State objected on the ground that no foundation had been laid regarding whether Plummer saw the back of the photographs when she made the identification. A sidebar was held, and the court ruled that counsel could question

Plummer regarding the back of the photograph only if he first established that she had seen it. Such a foundation could not be laid, defendants assert, because Plummer denied looking at the back side at the time of the identification. Therefore, defense counsel had to abandon further questions concerning the writing. Later defense counsel properly objected, defendants maintain, to the court's ruling that it would not "limit[] the defense" by masking the writing. Further, the trial court's ruling that the jury *could* look at the back of the photograph, defendants assert, was prejudicial error which entitles McGee to a new trial.

The State responds that the trial court properly exercised its discretion in allowing the photograph to be considered by the jury because it was displayed by the police along with 14 other photographs which also had writing on the back, and it was probative of how Plummer picked out defendant McGee from the array of photographs. At trial, the array of 15 photographs was admitted into evidence without objection.

Further, defense counsel's cross-examination of Plummer and defense counsel's closing argument insinuated to the jury that the back of the photograph gave Plummer reason to identify defendant from the photographs she was shown. Prior to defense counsel's attempt to cross-examine Plummer regarding the writing, Plummer stated that she never viewed the backs of any of the 15 photographs.

Later, the trial court, *sua sponte*, clarified its earlier ruling on this issue. The court stated that it would not limit the exhibits to the fronts of the photographs. Counsel for McGee replied that he "disagreed" with the court's ruling. The State asserts that defendants have waived this issue on appeal, since they failed to object at trial to the admission of the exhibit and failed to raise it in their post-trial motions. Finally, contrary to defendants' assertions, defendants failed to request that the trial court cover or "mask" the words on the backs of the photographs. Regarding the waiver issue, the State cites *People v. Brents* (1983), 115 Ill. App. 3d 717, 719, 450 N.E.2d 910, 912. *Brents* holds that the admission of the photographs is reviewable even in the absence of an objection at trial and in a post-trial motion, if the prejudice inherent in admitting them into evidence rendered the trial court's ruling plainly erroneous.

Even if defendants preserved this issue, the State contends, the trial court properly allowed the jury to view both the front and backs of the photographs, as defendants' defense was premised entirely on misidentification. (*People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1079, 467 N.E.2d 291, 293.) Further, since defense counsel brought

the suggestiveness of the photographic identification into issue, it was necessary for the jury to view the entire photograph in order to decide the identification issue.

The State also asserts that the lineup was reliable and proper. Further, the photographic array viewed by the victims was not improperly suggestive of the lineup, since Plummer's lineup identification of defendants was made immediately and positively. Additionally, Nash and Plummer had more than adequate time while the offense was being committed to obtain a sufficient independent basis for their in-court identifications of defendants.

In reply defendants assert that the State used Plummer's testimony that she never looked at the back of the photograph to its advantage in closing argument, by pointing out that Plummer picked out McGee's photograph for the sole reason that it depicted McGee, and not because of what was written on the back. Therefore, defense counsel's attempt to persuade the jury that the writing did affect Plummer's identification was fruitless and there was nothing left for the jury to decide. Defendants also contend that a fair and reliable lineup procedure would have involved two separate lineups, each involving only one of the defendants, rather than the single lineup including both defendants used in this case. Further, the fact that Nash was unable to identify McGee at the lineup substantially weakened the State's case.

Additionally, defendants assert that the trial court itself raised the issue and thereby preserved it for appeal when it, *sua sponte*, clarified its ruling on the issue. Further, defense counsel did object when the court stated that it would not limit the exhibit to the front of the photograph. Finally, defense counsel orally asserted this alleged assignment of error at the hearing on the post-trial motion, thus preserving the error for appeal. *People v. Norris* (1972), 8 Ill. App. 3d 931, 935, 291 N.E.2d 184, 187.

Even assuming that this issue was properly preserved for appeal, we find no prejudicial error. (*Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 897, 450 N.E.2d 788, 796.) The trial court properly exercised its discretion in allowing the photograph containing the writing on the back to go to the jury. (*People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1079, 467 N.E.2d 291, 293.) The record indicates that it was defense counsel who initially raised the issue of the suggestiveness of the photographic identification and pointed to the writing on the back of the photographs. Therefore, the trial court properly allowed the jury to view and consider during their deliberations the writing on the photographs. Addi-

tionally, defense counsel failed during or prior to trial to request that the court cover the writing on the backs of any of the photographs sent to the jury. Any potential prejudice to defendants could have been avoided if defense counsel had taken action to have the writing covered. Further, the fact that there was writing on some or many of the other 14 photographs sent to the jury suggests that any prejudice suffered by defendants as a result of the writing on the back of the subject photograph was minimized.

Further, we find that although the use of two separate lineups might have been preferable to the single lineup used, the lineup procedure employed in the instant case was constitutionally sufficient (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Norfleet* (1972), 4 Ill. App. 3d 758, 281 N.E.2d 761) and properly relied on by the trial court.

## IV

■ Finally, defendants contend that they were denied a fair trial where the State elicited testimony that the complaining witnesses never identified anyone but defendants, despite viewing numerous photographs, thereby improperly bolstering the witnesses' identifications with irrelevant prior consistent statements. Specifically, Nash and Plummer, the two complaining witnesses, and Officer Perry, who was in charge of investigating the case, were allowed to testify that the two complaining witnesses viewed hundreds of photographs prior to identifying defendants but failed to identify anyone from them. Moreover, in both opening and rebuttal arguments, the State repeatedly emphasized that Nash and Plummer never "misidentified" anyone. Such evidence, defendants contend, amounted to inadmissible prior consistent statements. (*People v. Emerson* (1983), 97 Ill. 2d 487, 500-01; *People v. Clark* (1972), 52 Ill. 2d 374, 389.) Further, since the only evidence that defendants committed the charged offense was the identification testimony, its admission constituted error entitling defendants to a new trial.

Generally, evidence that a witness previously failed to identify someone other than the defendant is inadmissible as a prior consistent statement. (*People v. Trass* (1985), 136 Ill. App. 3d 455, 464, 483 N.E.2d 567, 574-75.) Additionally, the rule against admissibility of prior consistent statements applies also to a third party who seeks to testify concerning the witness' prior consistent statement. *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 351, 432 N.E.2d 986, 994.

The error in admitting the testimony in this case, defendants assert, was exacerbated by the State's failure to disclose to defense

counsel prior to trial the fact that Officer Perry had shown Nash and Plummer numerous photographs prior to their identification of defendants. Failure to disclose this fact allowed the State to imply, without fear of contradiction, that none of the photographs shown to the victims included photographs of McGee or Eason. Defendants contend that even assuming that neither victim viewed defendants' photographs prior to their identifications, nevertheless the fact that they never identified anyone other than defendants proves only that they were consistent in identifying defendants, not that they were correct in doing so.

The State, on the other hand, asserts that the officer's testimony was relevant evidence admitted to corroborate the reliability of the victims' identification of defendants. Further, the testimony of all three witnesses was relevant to rebut defense counsel's repeated insinuations during cross-examination that the victims were unsure as to what the assailants looked like. Further, Perry's testimony made the reliability of the victims' identifications more probable than they would have been without the testimony. *People v. Gholston* (1984), 124 Ill. App. 3d 873, 891, 464 N.E.2d 1179, 1192.

The State asserts that assuming *arguendo* that Perry's testimony was improperly admitted into evidence, nevertheless, in light of the "overwhelming evidence" of defendants' guilt, any resulting error was harmless. Further, Perry's testimony was merely cumulative of other properly admitted evidence (*i.e.*, Nash and Plummer's testimony), and therefore its admission does not warrant reversal. *People v. Olmos* (1978), 67 Ill. App. 3d 281, 295, 384 N.E.2d 853, 865.

Additionally, the State distinguishes *People v. Trass* (1985), 136 Ill. App. 3d 455, 483 N.E.2d 567, which held that evidence that a witness previously did not identify someone other than the defendant is not relevant to refute the possibility that an in-court identification was based solely on the suggestiveness of the trial setting. (136 Ill. App. 3d 455, 464, 483 N.E.2d 567, 574.) In the instant case, Perry's testimony was relevant corroboration of the reliability of the identifications and rebuttal of defense counsel's insinuations. Further, the State notes, *Trass* held that the error committed in admitting the officer's testimony was harmless. 136 Ill. App. 3d 455, 464, 483 N.E.2d 567, 575.

In reply defendants contend that the State has failed to argue that the testimony of the three witnesses fits into the only stated exception of the rule against the admissibility of a prior consistent statement, that is, a statement made to rebut a defense claim of recent fabrication. (*People v. Emerson* (1983), 97 Ill. 2d 487, 500.) Addition-

ally, the evidence of defendants' guilt was not overwhelming, as the identification testimony was weak. Also, the State's argument that Perry's testimony was cumulative of the properly admitted testimony of Nash and Plummer fails, since Nash and Plummer's testimony also was improperly admitted.

We find that the testimony of the three witnesses was inadmissible as prior consistent statements, but also that any error resulting from its admission was harmless. We reject the State's argument that the police officer's statements were properly admitted to corroborate the victims' testimony or to rebut defendants' insinuations that the victims' identification testimony was weak, as the statements offered fall under the definition of prior consistent statements. (*People v. Emerson* (1983), 97 Ill. 2d 487, 500-01.) Further, defendants properly note that the statements were not offered under the stated exception allowing for the admission of prior consistent statements, *i.e.*, to rebut a claim of recent fabrication. 97 Ill. 2d 487, 500; Fed. R. Evid. 401.

We also find, however, that the State's distinction of *People v. Trass* (1985), 136 Ill. App. 3d 455, 483 N.E.2d 567, from the instant case is valid. We also note that there is some support in *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, for the trial court's proper consideration of the fact that a victim failed to identify anyone but the defendant. Finally, we find that, in view of the overwhelming guilt of defendants in this case, any error committed by the trial court in admitting the testimony was harmless. *People v. Prather* (1985), 138 Ill. App. 3d 32, 43, 485 N.E.2d 430, 437-38.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P.J., and RIZZI, J., concur.